THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. CITY OF BINGHAMTON, Respondent.

Third Department, March 21, 1956.

*Jacob K. Javits, Attorney-General (Joseph H. Murphy* and *James O. Moore, Jr.,* of counsel), for appellant.

*John V. Romagnoli, Corporation Counsel (C. Addison Keeler, Jr.,* of counsel), for respondent.

*Per Curiam.* The State of New York as lessor of a veterans' housing project of which the City of Binghamton was lessee, has been required to pay damages resulting from a fall and injury to Jennie H. Hawk on a sidewalk of the project (*Hawk* v. *State of New York,* 283 App. Div. 225, affd. 307 N. Y. 788). In this action to recover against the City of Binghamton the amount which the State has been required to pay in damages the State's complaint has been dismissed at Special Term.

The ground for dismissal is that in the *Hawk* case it was determined that the State retained such actual control of the project and of the expenditures for its maintenance, that the adjudication must be deemed to have rested on the State's own direct negligence. Therefore the Special Term was of opinion that the first cause of action which is based on a covenant in the lease by which the city assumed " full responsibility " for keeping the premises in good repair and for maintaining the premises, and by which it was agreed the State would assume no responsibility to third persons should be dismissed.

The court treated this cause as resting on an agreement to reimburse the State for its own negligence. Such a covenant for reimbursement for a party's own negligence, as the court

noted, must be clearly expressed under *Thompson-Starrett Co.* v. *Otis Elevator Co.* (271 N. Y. 36) and the Special Term felt it was not here clearly expressed.

The court dismissed the second cause of action which pleads a breach by defendant of a covenant to keep the premises in repair, on the ground the State was found in the *Hawk* case (*supra*) to have been in control of the premises and hence the rule is to be applied here that a breach of covenant to repair is actionable only where the party charged (here the city) is in control of the premises.

The third cause of action based upon a claim that the negligence of the city cast plaintiff in damages to Mrs. Hawk without any negligence on the part of the State, was dismissed on the ground the decision in the *Hawk* case (*supra*) rested on the active negligence of the State and hence there can be no recovery by the State against the city. Thus the entire complaint went down.

The State is entitled on a motion addressed to the complaint to have its pleading and the exhibits which are part of it read in the aspect most favorable to it as the pleader. Since it sues on loss sustained because of the judgment, it is, of course, bound to take the judgment as it is, in its unfavorable, as well as its favorable terms (*Employers' Liability Assur. Corp.* v. *Post & McCord,* 286 N. Y. 254).

It is not clear, however, from reading the pleadings or the judgment in the *Hawk* case (283 App. Div. 225, affd. 307 N. Y. 788, *supra*), attached to and made a part of this complaint, that it was there necessarily adjudicated that liability was imposed on the State because of its " active " negligence. The claim in the *Hawk* case, which is an exhibit attached to the complaint here, pleaded a number of alternative theories of liability. It sets forth, for example, that the State had negligently permitted the sidewalk " to become * * * icy, slippery, [and] snowy "; that it permitted the sidewalk to be insufficiently illuminated; that it " constructed " as well as maintained the sidewalk in a dangerous manner. We are not advised on this record which of these causes were found to have been the basis of the State's liability.

From the opinion in this court (283 App. Div. 225, 227) it seems, however, that the finding of liability in the Court of Claims was based on a failure to clear off ice and snow from the sidewalk, coupled with a sufficient " control " or " supervision " of the project by the State to rest that duty on the State as lessor. This control was said to have been found because of the fact that the number of maintenance employees

hired by the lessee city and their compensation needed State approval; and a finding that State officers gave instructions to the city's managing agent as to making physical repairs.

It may be seen at once that although there may have been sufficient policy "control" of the general scheme of maintenance and of money allocations for that purpose, including the number of employees required to maintain the premises to spell out a liability against the State as lessor to a third party, there may at the same time be a liability over in favor of the State as lessor against the lessee who had direct control and responsibility for the actual maintenance.

The lessor might have a right to decide how much money was to be spent for maintenance for example; but if, in spite of adequate allocations for maintenance, the lessee in actual control of the work and in daily observation of physical conditions failed to clear away the snow and allowed it to accumulate dangerously it could readily be adjudged to respond in contract or in tort if the State were cast in damages because of the city's failure to use reasonable care in maintenance.

Where the lessee undertakes the care and maintenance of property by express terms of the lease, assumes full responsibility to third parties and fails to maintain the premises, its negligence may be chargeable to the lessor on the complaint of a third party, but as between the lessee and lessor themselves, there is no bar to recovery because of the "joint tort-feasor theory".

This is not a case where indemnity is sought against one's own act of negligence. The negligence of the State here could be found derived entirely from the acts of the defendant city. It is a case where, even assuming a general supervision by the lessor, the lessee could be found to have escaped the lessor's supervision, failed to do what it should have done and agreed to do, and cast the lessor in damages.

There is, however, as far as the record before us discloses, no finding in the *Hawk* case (*supra*) that the State had actual control of snow removal or knew actually, or even constructively, of the slippery conditions which caused Mrs. Hawk to fall. There is little doubt that if the State's fiscal policy allowed for sufficient service to keep the walks clear of ice and snow and the city failed to do this, the State can recover over under the terms of its lease.

The general rule is that "unless the parties concurred in the wrong", one who is cast in damages by the negligence of another may recover against the one who was actively negligent (*Oceanic Steam Nav. Co.* v. *Compania Transatlantica Espanola*,

134 N. Y. 461). This is upon general tort theory independent of any of the affirmative contractual undertakings in the lease.

The case is even stronger where the lessor is out of possession and there is an affirmative undertaking in the lease to maintain the premises. See for example the case of the defective elevator which the tenant had agreed to keep in good repair considered in *Wischnie* v. *Dorsch* (296 N. Y. 257). See, also, *Richardson* v. *Cannold Holding Corp.* (283 App. Div. 789).

If the liability imposed on the State arose from the negligent manner in which the city removed snow and ice from the walks, or from its manner of maintenance of the premises, and if the part the State played in this process was merely a control of fiscal and management policies without direct participation in maintenance, we see no good ground why after a trial at which such facts might be found it could not recover against the city. Such a recovery could be grounded either on the contractual obligations assumed in the lease or upon the broad tort theory entitling one cast in damages by the negligence of another to recover upon showing there was no " concurrent " negligence. We think the complaint is good and should stand.

The judgment should be reversed and the motion denied, with $10 costs to appellant.

FOSTER, P. J., BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Judgment reversed and motion denied, with $10 costs to appellant.