Harry B. Frank, J.
The plaintiff herein brought suit against both the owner, Lenko Bealty Co. Inc., and the tenant in possession, Modern Trend Furniture Co., of the premises located at 241 First Avenue in New York City. She sought redress for personal injuries allegedly sustained by her while walking on the sidewalk in front of those premises by reason of a defective condition existing at the edge of the cellar doorway located on that sidewalk.
During the trial of plaintiff’s case a settlement was agreed upon by all parties whereby a judgment on consent, in the sum of $6,500 was entered in favor of the plaintiff against both defendants, and determination of the validity of the cross claim over by defendant Lenko against the tenant Modern Trend was left to the court.
In connection with the cross claim, the lease between Lenko and Modern Trend, and certain other exhibits, were placed in evidence, and, in addition, testimony was given by one Samuel Garfiñe, an officer of Modern Trend. It was conceded on the trial that the entire building from cellar to roof was fully in the possession of Modern Trend, that Modern Trend had sole and exclusive control of the building, as such, and that the lease so provides. Garfiñe’s testimony indicated that Modern Trend alone used the basement beneath the building and that the cellar doors were used by it for entry thereto.
The lease between Lenko and Modern Trend includes the following provisions:
“ 5. Tenant shall take good care of the demised premises, and of the fixtures therein. * * * Landlord may repair, at the expense of Tenant, all damage or injury to the demised premises, or to the building of which the same form a part, or to its fixtures, appurtenances or equipment, done by Tenant or Tenant’s servants, agents, employees, visitors or licensees, or resulting from fire, short circuits, the overflow or leakage of water, steam, illuminating gas, sewer gas, sewerage or odors, or by frost, or by the bursting or leaking of pipes or plumbing-works or gas, or from any other cause, due to the carelessness,. *378 negligence or improper conduct of Tenant or Tenant’s servants, agents, employees, visitors or licensees. * * * ”
“ 10. * * * Tenant shall reimburse Landlord as additional rent for all expenses, damages or fines incurred or suffered by Landlord by reason of any breach, violation or nonperformance by Tenant, or Tenant’s servants, employees, agents, visitors or licensees of any covenant or provision of this lease, or by reason of damage to persons or property caused by moving property in and/or out of the building or by the installation or removal of furniture or other property of or for Tenant,, or by reason of or arising out of the occupancy or use by Tenant of demised premises or of the building of which demised premises form a part, or any part of either thereof, or from any other cause due to the carelessness, negligence or improper conduct of the Tenant or the Tenant’s servants, employees, agents, visitors or licensees.”
“ 38. Notwithstanding anything herein to the contrary set forth and contained, the Tenant agrees that it will, during the term hereof, keep and maintain all buildings and improvements erected upon the demised premises, both outside and inside, including (but without limiting the generality of the foregoing) the sidewalks adjacent to the demised premises and the sewers and water mains servicing the demised premises, in good, substantial order and repair, at the Tenant’s sole cost and expense, making all repairs and replacements, structural or otherwise, which are necessary to so maintain said buildings and improvements, so that at all times the said buildings and improvements shall be in thorough good order, condition and repair, reasonable wear and tear excepted.”
“ 16. * * * Landlord or Landlord’s agents shall have the right to enter the demised premises at all times, to examine the same, and to show them to prospective purchasers or lessees of the building ”.
In regard to repairs, Mr. Garfiñe testified that the owner, at its own expense, had made extensive repairs to the premises during the term of the lease, both prior to the accident, and subsequent thereto. In that connection he testified that some months after the accident the landlord at its own expense replaced the sidewalk in front of the building. Mr. Garfiñe did admit that some repairs were also made by Modern Trend, and defendant Lenko submitted as its Exhibit C a statement dated May 16, 1958, and signed by Mr. Garfiñe, which includes the following: “ I lease the entire building at 241 First Ave. from Lenco [sic] Realty Corp. I make all the repairs on the building inside and outside.”
*379 No evidence was produced to show how the defective condition at the edge of the cellar door arose.
On the facts presented it must be concluded that the negligence of both Lenko and Modern Trend, insofar as the plaintiff is concerned, was based upon a failure to maintain the cellar door area in a reasonably safe condition, and there is no factual basis from which either could be held liable for actually creating the dangerous condition.
As to the plaintiff, Modern Trend’s duty to maintain the area in a reasonably safe condition was predicated upon its actual possession and control of the premises, including the cellar door area, and from its use of that area, in accordance with the well-settled principle that liability in tort is incidental to occupation and control. (Dick v. Sunbright Steam Laundry Corp., 307 N. Y. 422; Cullings v. Goetz, 256 N. Y. 287; Warren, Negligence, vol. 2B, p. 273; vol. 4, p. 91.)
Lenko’s liability to the plaintiff, on the other hand, arose by virtue of its ownership of the premises. An abutting owner owes to the general public the duty of maintaining in a reasonably safe condition that portion of the sidewalk which is constructed in a special manner for the benefit of his adjoining property. The obligation runs with the land. (Trustees of Canandaigua v. Foster, 156 N. Y. 354; Nickelsburg v. City of New York, 263 App. Div. 625.) While the owner may defeat liability to a member of the public by a lease providing for exclusive occupation by a tenant, the lease between this landlord and tenant was not sufficient for that purpose. The owner’s duty to the public continues where the lease contains a provision, such as is here present, giving him the right to re-enter to make repairs. Such provision is construed to invest the owner with sufficient control of the premises to hold him liable to a member of the public negligently injured on the sidewalk. (See Appel v. Muller, 262 N. Y. 278; Gildea v. Harris Fine Realty & Constr. Co., 249 App. Div. 775.)
The mere fact that both defendants may be guilty of negligence in law as to the person injured does not necessarily mean that they are participes criminis or in pari delicto as to each other. Where several tort-feasors are involved, an implied contract of indemnity arises in favor of the wrongdoer who has been guilty of passive negligence, if there be such, against the one who has been actively negligent. The actively negligent tort-feasor is considered the primary or principal wrongdoer and is held responsible for his negligent act not only to the person directly injured thereby, but also to any other person *380 indirectly harmed by being cast in damages by operation of law for the wrongful act. The right to indemnity is subject to the exception that it will not be applied in favor of one contributing to the direct injury by his own active negligence. (McFall v. Compagnie Maritime Belge, 304 N. Y. 314; Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414.)
The determination of whether the negligence of one is active or passive is largely a factual one. Since neither defendant herein can be held responsible for actually creating the dangerous condition, it should be emphasized that the fact that both defendants are guilty of acts of omission only does not necessarily make them equally culpable, nor defeat the right of one to indemnity (Tipaldi v. Riverside Mem. Chapel, supra). Faults of omission as well as faults of commission may constitute active negligence (McFall v. Compagnie Maritime Belge, supra).
The facts here indicate, and it is conceded, that the tenant was in full possession and control of the entire premises including the cellar door area. Such occupation imposed upon the tenant the primary responsibility for safe and proper maintenance and repair. (Cf. Wischnie v. Dorsch, 296 N. Y. 257; Mirsky v. Sedich Realty Co., 256 App. Div. 658.) Here that obligation was re-enforced by an express covenant in the lease specifically requiring the tenant to make all repairs and to keep and maintain the premises, including the sidewalk area, in good order and repair. Such covenant imposes an active duty on the tenant to make needed repairs (2 New York Law of Landlord and Tenant, § 930, p. 995). Furthermore, the landlord Lenko was not in possession of any part of the premises, and the only control that it exercised was the limited right to re-enter pursuant to the provision in the lease. As between Lenko and Modern, Lenko had no obligation to repair. The lease affirmatively placed that burden on the tenant. Lenko’s duty to the plaintiff arose merely as an incident of the ownership of the property. It is a duty imposed by law for the public safety, and public policy requires continuation of the duty even where the owner is out of possession and retains such limited control over the property, as in this case, in order to readily afford the public with adequate protection, without the hazards of ascertaining the precise relation existing between the owner and tenant. (Trustees of Canandaigua v. Foster, supra; also, see discussion in Wischnie v. Dorsch, supra, p. 262.) But while the owner was negligent vis-a-vis the plaintiff on this basis, its negligence was merely passive. Its liability to the plaintiff arose because of the tenant’s failure to perform the duties imposed upon it both by virtue of actual occupation and control of the premises, as well *381 as by the covenant in the lease. Had the tenant fulfilled those obligations, the landlord would not be responding in damages to this plaintiff. Thus, the tenant in active possession and control of the entire premises, including the area where the accident occurred, who specifically assumed the obligation to repair, was actively negligent under these circumstances and the owner, as a passive wrongdoer, is entitled to be indemnified.
A like conclusion resulted in the case of Tipaldi v. Riverside Mem. Chapel (supra) which is in many respects similar to the case at bar. In the Tipaldi case, too, both defendants were guilty of faults of omission only. Particularly relevant is that portion of the decision wherein the court cites and quotes from the case of Phœnix Bridge Co. v. Creem (102 App. Div. 354) as follows: “ ‘ In other words, while both the plaintiff and the defendants were equally culpable and equally liable to the traveling public for the omission of duty which resulted in the injury, yet as between themselves the plaintiff was entitled to rely upon the defendants to discharge the duty because of their contractual relations, and the former could only be deprived of the right of indemnity by proof that it did in fact participate in some manner in the omission beyond its mere failure to perform the duty imposed on both by the law ’ ” (p. 419).
In the instant case there is another basis for indemnification. Where the tenant is in possession of the premises and the lease contains a general covenant of indemnity together with an express covenant on the part of the tenant to repair, the effect is to indemnify the landlord. It has been held that a lease containing these provisions does not fail to clearly express an intention to indemnify for negligent acts so as to fall within the rule of Thompson-Starrett Co. v. Otis Elevator Co. (271 N. Y. 36) (Mirsky v. Seaich Realty Co., 256 App. Div. 658, supra). The court in the Mir shy case (p. 661) set forth the effect of such provisions as follows: ‘1 The present contract, however, contains more than an incidental covenant of indemnity. The tenants expressly agreed to repair the premises, in addition to agreeing to indemnify the landlord. Where the parties in clear and express language contract that ‘one of them is to assume the duty to repair and thus become responsible for injuries to third persons growing out of lack of repair, there is no room left for construction. ’ ’
It is strongly urged by the defendant tenant that the provision in the lease giving the landlord the right to re-enter to make repairs, and the actual repairs made by the landlord should serve to negate the foregoing. It appears, however, that such argument lacks merit.
*382 The repairs made by the landlord in no way altered or changed the effect of the covenants and obligations set forth in the lease, nor did such conduct impose new obligations on the landlord. “ If the contract is plain, its obligations cannot be altered by any act of either party, in assuming the burden of the other party to the contract to which he is not bound by the contract itself. The mere fact that the landlord chose to relieve a tenant of this duty to repair is in no way an admission of an obligation so to do and tends in no way to create any duty not imposed by the contract itself.” (Elefante v. Pizitz, 182 App. Div. 819, 822, affd. 230 N. Y. 567; see, also, Potter v. New York, Ontario Western Ry. Co., 233 App. Div. 578, affd. 261 N. Y. 489; Fogelson v. Rackfay Constr. Co., 300 N. Y. 334; Baitzel v. Rhinelander, 179 App. Div. 735.)
Similarly, the reservation to re-enter and the making of repairs thereunder would not serve to transform the landlord who would otherwise be a passive wrongdoer into an active wrongdoer. (See Wischnie v. Dorsch, 196 Misc. 679, in which precisely this issue is thoroughly explored in an illuminating opinion by Mr. Justice McNally. )
Since the exercise of the right to re-enter to make repairs does not alter the contractual obligations of the parties as set forth in the lease, nor transform the landlord into an active wrongdoer, indemnification, as previously indicated, is warranted under the circumstances of this case. The defendant tenant submitted no proof of any conduct on the part of the landlord which would defeat this right. There was no showing of any active participation in the wrong beyond its mere failure to perform the duty imposed by law, nor was there a showing of actual knowledge and acquiescence in the continuation of the danger by the landlord. (See Tipaldi v. Riverside Mem. Chapel, 273 App. Div. 414, supra; Ruping v. Great Atlantic & Pacific Tea Co., 283 App. Div. 204.)
The cases cited by defendant tenant are for the most part inapposite factually. They deal primarily with the question of the landlord’s liability to persons in the plaintiff’s position, which is not here in issue. Although the case of Olivia v. Gouze (285 App. Div. 762, affd. 1 N Y 2d 811) might superficially seem to have some application, a perusal of the record in that case also indicates a completely different factual situation. In that case, the owner did not lease the entire premises to the tenant but on the contrary leased only a small portion of the premises, not including the area in which the accident occurred. The landlord himself retained active control of certain portions of the property maintaining a superintendent on the premises. Fur *383 thermore, the lease in that ease specifically did not exempt the landlord from liability where ‘1 said damage or injury be caused by or be due to the negligence of the Landlord” (App. Div., Record on Appeal, plaintiff’s Exhibit 10, par. 12, pp. 386-387).
Some question has been raised in regard to the proper measure of damages recoverable by the landlord as a result of the tenant’s breach of its covenant to repair. The defendant tenant apparently seeks to defeat indemnification by contending that the breach of this covenant is purely the breach of a contractual obligation between the two parties, and should be measured by the ordinary rule of damages applicable to contractual breaches. But as was pointed out in a strikingly similar situation: “ It is alleged in this action, however, that the covenant was made in a lease covering premises which included a cellar entrance, in a public highway. The owner of such premises owes a duty to the public. If he contracts with another, as a condition of a lease of the premises, that the other shall perform that duty, the covenant to perform it is not one which relates to private matters alone, but is one which relates to matters with which the public, and third parties are also concerned. If, on failure of performance, the lessor is made to answer in damages for an injury resulting thereby, he may have an action over, against the covenantor, and the measure of his recovery is the amount which he has been compelled to pay. City of Brooklyn v. Brooklyn City R. R. Co., 47 N. Y. 475, 7 Am. Rep. 469; Cullings v. Goetz, supra, 256 N. Y. at page 293, 176 N. E. at page 399; Mirsky v. Seaich Realty Co., 256 App. Div. 658, 11 N. Y. S. 2d 191.” (McCreech v. Howard Ware Corp., 53 N. Y. S. 2d 192.)
The defendant, Lenko Realty Co., is entitled to judgment on its cross claim over against the defendant, Modern Trend, the correct name of the defendant tenant as amended at the trial, and the Clerk is directed to enter judgment in accordance herewith.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.